A97A1263. KIMBALL et al. v. PERRIER.
(492 SE2d 913)

RUFFIN, Judge.

Chiropractor Debra Perrier sued Max Kimball, Marvin McClure, and Barbara McClure ("appellants") after she was evicted from office

space she leased for her practice from Stellar Enterprises, Inc. ("Stellar Enterprises"). After the eviction, Stellar Enterprises sold the office property to appellants doing business as Kimball McClure Leasing Company ("Kimball McClure Leasing").[1] In her complaint, Perrier alleged that appellants committed fraud by concealing the transfer of the office property, and claimed, therefore, that they owed her a one-third share of the proceeds from the office building sale. A jury awarded Perrier $10,000 in compensatory damages and $50,000 in punitive damages. Appellants now assert that the trial court erred in denying their motions for judgment notwithstanding the verdict and new trial because there was insufficient evidence of damages. We agree, and for reasons which follow, we reverse.

1. "Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. A trial court may grant a motion for [j.n.o.v.] only where there is no conflict in the evidence as to any material issue and the evidence, with all reasonable deductions, demands a particular verdict. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant[s'] motions for new trial and [j.n.o.v.] will not be disturbed." (Citations and punctuation omitted.) *Willis v. Brassell*, 220 Ga. App. 348 (469 SE2d 733) (1996).

Viewed in a light most favorable to upholding the verdict, the evidence at trial showed that in 1987 Perrier wanted to open a chiropractic office and that Max Kimball offered his help. Kimball proposed that he, Perrier and a building contractor, Marvin McClure, work together to build the office on land he previously purchased with McClure for $30,000. Accordingly, Kimball and McClure conveyed the land to Stellar Enterprises, Inc., a corporation established by Marvin and Barbara McClure in 1983, and the corporation thereafter obtained a $210,000 bank loan to finance the construction of the office building and the purchase of equipment. As part of the loan transaction, Stellar Enterprises granted the bank a security deed for the land in the loan amount.

In exchange for conveying the land to Stellar Enterprises, Kimball and Barbara McClure each received one-third of Stellar Enter-

---

[1] The title of the entity which acquired the office building is inconsistently referred to throughout the record as both McClure-Kimball Leasing Company and Kimball-McClure Leasing Company. It will be referred to here as Kimball McClure Leasing Company, inasmuch as that is the name of the grantee on the warranty deed.

prises' stock. Although Kimball originally proposed that Perrier pay $10,000 for the remaining one-third share of Stellar Enterprises, when Perrier explained that she had no money, the parties agreed that she would generate the architectural design and landscape plans for the building and decorate the building in exchange for her one-third share. As agreed by the parties, once constructed, Stellar Enterprises leased the facility to Perrier for the operation of her practice, and the corporation assigned the rent to the bank as payment on the $210,000 note.

From the time her clinic opened in 1987 until July 1990, Perrier's practice struggled financially, but she was able to make all but one lease payment. However, the ad valorem taxes on the office were not paid in 1988 or 1989, and the city issued a writ of fieri facias for the delinquent taxes against Stellar Enterprises' property. When Perrier failed to pay the past due taxes in July 1990, Stellar Enterprises notified her she was in breach of the lease and demanded that she immediately vacate the premises. Perrier complied with the demand.

Because Stellar Enterprises had no money to satisfy its debts, including the bank note, the company scheduled a corporate meeting in October 1990 and notified Perrier of the meeting. The purpose of the meeting was to consider an offer by appellants doing business as Kimball McClure Leasing to purchase the office property for $197,000, the balance owing on the bank note. Perrier did not attend the meeting where, according to Barbara McClure, the stockholders of Stellar Enterprises decided to sell the property to Kimball McClure Leasing for $197,000 plus the amount of outstanding taxes.

After the sale, appellants denied Perrier was ever a shareholder in Stellar Enterprises and she did not receive any money from the transaction. Perrier subsequently filed the instant action alleging fraud and claiming a one-third share in the sale proceeds.

Although at trial Perrier was required to prove the five elements of fraud in support of her action, see *Fowler v. Overby*, 223 Ga. App. 803 (478 SE2d 919) (1996), we need not address evidence supporting the first four elements because appellants have only challenged the evidence of damages. The measure of damages in an action for fraud and deceit is the actual loss sustained. See *Southern Cellular Telecom v. Banks*, 208 Ga. App. 286, 291 (4) (431 SE2d 115) (1993). Upon review of the evidence under the standard presented in *Willis*, supra, however, we find there was insufficient evidence of damages to support Perrier's claim.

We note initially, that in the pretrial order, the measure of damages is stated as "the market value of the subject property at the time of the sale from Stellar Enterprises, Inc. to [appellants] less the debt owed to third parties secured by said property plus the appreciation in market value of said property to date less costs of improvements, if

any, incurred by [appellants]. Value to be determined by competent appraisal; said damages shall be proportional to [Perrier's] ownership interest in Stellar Enterprises, Inc." Thus, it appears Perrier attempted to recover as actual damages a one-third share of what the sale profit would have been if the office building was sold at fair market value.

It is readily apparent from the transcript, however, that contrary to the measure of damages presented in the pretrial order, there was absolutely no "competent appraisal" evidence presented at trial. Furthermore, the only evidence concerning the market price of the office building at the time of sale is the purchase price paid by Kimball McClure Leasing. Even considering this evidence, it fails to show that Stellar Enterprises profited from the sale because the purchase price paid was equal to the amount owed to the bank under the note and the deed securing the property. Thus, even assuming Perrier had a one-third ownership interest in the office building, she could not prove an actual loss from the sale because there was no profit realized from the transaction.

In her brief on appeal, however, Perrier argues that there was sufficient evidence of damages because she stated at trial that she wanted appellants to repay her the money she spent on lease payments. She contends that because there was evidence showing the amount of those lease payments, the trial court properly denied appellants' motion.

Assuming without deciding that this claim for damages was properly before the jury, see *Hasty v. Russell*, 165 Ga. App. 276, 277 (300 SE2d 317) (1983), we find that there was insufficient evidence to support the claim. As stated above, the measure of damages in an action for fraud is the actual loss sustained. See *Banks*, supra. Even if appellants' alleged fraud resulted in Perrier leasing the office building, her actual loss was not the amount of the lease payments. In return for those payments, Perrier was entitled to, and did in fact occupy the building. Any actual loss resulting from the lease payments would have been the difference between what Perrier actually paid and the fair rental value of the property during her lease. Cf. *Brooks v. Dime Savings &c.*, 217 Ga. App. 441, 443 (1) (457 SE2d 706) (1995). Although Perrier is correct that there was evidence showing the amount of her lease payments, there was no evidence showing she suffered any actual loss by making lease payments that exceeded the fair rental value. See id.; see also *Kunzler Enterprises v. Rowe*, 211 Ga. App. 4 (438 SE2d 365) (1993).

" '[T]he question of damages cannot be left to speculation, conjecture and guesswork.' [Cit.]" *Brooks*, supra at 442-443. In this case, Perrier presented no evidence showing she suffered any damages based on the property's sale below market value or based on exces-

sive lease payments. Absent such evidence, the jury was not authorized to award her actual damages and the trial court erred in denying appellants' motion for j.n.o.v. See id.

2. We likewise find that the trial court erred in denying appellants' motion with regard to punitive damages. " '[T]o establish a cause of action for fraud, a (party) must show that actual damages, not simply nominal damages, flowed from the fraud alleged.' [Cit.] Moreover, a party is not entitled to punitive damages if the party fails to set out a cause of action in tort. [Cit.]" *Stiefel v. Schick*, 260 Ga. 638, 639 (2) (398 SE2d 194) (1990). Because Perrier failed to show actual damages flowed from the alleged fraud, she failed to establish a cause of action in fraud. Without establishing this cause of action, Perrier was not entitled to punitive damages. See id.

*Judgment reversed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 27, 1997.

*Murphy, Murphy & Garner, Thomas B. Murphy, Gammon & Anderson, Joseph N. Anderson*, for appellants.
*Adrian F. Lanser III*, for appellee.